JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0739 CRB |
| Plaintiff, ) | |
| v. ) | **UNITED STATES' SENTENCING MEMORANDUM** |
| HAKEEM A. PERRY, ) | |
| Defendant. ) | |

## I. INTRODUCTION

On January 23, 2008, the defendant pled guilty to the sole Count of the captioned Indictment, a violation of 18 U.S.C. § 113(a)(6), assault resulting in serious bodily injury. The defendant pled "open" in that there was no plea agreement between the parties. Sentencing has been set for August 6, 2008.

The United States agrees with U.S. Probation's calculation in the presentence report (hereinafter "PSR") of an Offense Level of 22 and Criminal History Category of III, yielding an applicable Guidelines range of 51-63 months of imprisonment. In the view of the United States, a sentence within this range is wholly "sufficient, but not greater than necessary, to comply with the purposes" of the statutory sentencing scheme. 18 U.S.C. § 3553(a). Accordingly, the United States respectfully requests that the Court sentence the defendant to 57 months of imprisonment,

the middle range of the Guidelines.  In addition to the above-referenced requests, the United States respectfully recommends that the Court include as part of its sentence the following conditions: three years of supervised release, a stay-away order for the victim in this case, that the defendant participate in a mental health treatment program at the direction of the probation officer, that the defendant comply with taking his prescribed medications, that the defendant not own or possess any firearms, ammunition, or destructive devices, that the Court order restitution for the victim, that the defendant cooperate in the collection of DNA as directed by the probation officer, a search condition, and payment of a $100 special assessment.

## II.  DISCUSSION OF GUIDELINES CALCULATIONS

### A.    U.S.S.G. § 2A2.2(a) (Base Offense Level)

The defendant pled guilty to a violation of 18 U.S.C. § 113(a)(6), which specifically references U.S.S.G. § 2A2.2(a).  *See* Guidelines Manual Appendix A.  Accordingly, the defendant's base offense level should be 14.

### B.    U.S.S.G. § 2A2.2(b)(3)(B) (Specific Offense Characteristics)

Pursuant to U.S.S.G. § 2A2.2(b)(3)(B), if the victim sustained serious bodily injury, 5 levels shall be added to the base offense level.  Here the victim suffered a broken bone in his face, lost consciousness, and required hospitalization in the intensive care unit.  Accordingly, the Court should add five levels for specific offense characteristics.

### C.    U.S.S.G. § 3A1.2(a) (Victim-Related Adjustments)

Pursuant to U.S.S.G. § 3A1.2(a), "if (1) the victim was (A) a government officer or employee... and (2) the offense of conviction was motivated by such status, increase by 3 levels." Pursuant to U.S.S.G. § 3A1.2(b), if subsection (a)(1) and (2) apply, and the applicable Chapter Two guidelines is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels. Six levels should be added as the victim in this case was a San Francisco Muni bus driver.  The defendant assaulted the victim during the course of the victim's duties, while riding the victim's assigned bus. U.S.S.G. § 3A1.2(b).

### D.    U.S.S.G. § 3E1.1 (Acceptance of Responsibility)

The United States respectfully recommends that the defendant be entitled to a two-point

reduction in offense level under U.S.S.G. § 3E1.1(a) because he has "clearly demonstrate[d] acceptance of responsibility for his offense" under the terms of § 3E1.1(a) by truthfully admitting to the facts establishing his guilt.

The defendant is likewise entitled to a third point for acceptance of responsibility under the distinct standard set forth in U.S.S.G. § 3E1.1(b). To qualify for this third point, the defendant must have "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." § 3E1.1(b). Because the defendant pled guilty in this case in a timely manner that avoided any preparation for trial, the United States hereby moves that he be granted this third point as well.

### III.  OTHER § 3553(a) FACTORS

In light of the *Booker* Court's severance of 18 U.S.C. § 3553(b)(1) from the federal sentencing statute, sentencing courts are obliged to consider the factors set forth in § 3553(a), including the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and avoid sentencing disparities among similarly situated defendants. The United States submits that a mid-range sentence under an Offense Level of 22, within the advisory Guidelines range, is both reasonable and appropriate in this case.

**A. The "nature and circumstances of the offense and the history and characteristics of the defendant".**

The nature and circumstances of the offense in this case are gravely serious. On November 7, 2007, the defendant was riding San Francisco Muni Bus # 29 in the vicinity of Bowley Street and Lincoln Boulevard, in the Presidio of San Francisco. *See* PSR ¶ 6. The defendant was sitting in the rear of the bus and when the bus got to the end of the line, the defendant said he wanted to go further. *See* PSR ¶ 13. The victim suggested the defendant transfer to another bus if he wanted to go further. *See* PSR ¶ 13. The defendant then told the victim to call the police to get him an ambulance. *See* PSR ¶ 13. The victim asked the defendant

why he needed an ambulance because he wanted to help the defendant if there was a problem. *See* PSR ¶ 13.  The defendant did not answer.  *See* PSR ¶ 13.  The defendant then grabbed the victim and started beating him.  *See* PSR ¶ 13.  The defendant dragged the victim off the bus, continuing to beat him, and struck the victim against a concrete wall.  *See* PSR ¶ 13.  The victim feared he was going to die and passed out at some point.  *See* PSR ¶ 13.  The victim managed to crawl back to the bus and push the panic button to get help.  *See* PSR ¶ 13.  The defendant attacked the victim again and the victim bit the defendant's hand to get away.  *See* PSR ¶ 13.  After the United States Park Police and Presidio Fire Medic responded to the scene, the victim was transported to San Francisco General Hospital in critical condition.  *See* PSR ¶ 8.  The victim suffered a broken bone in his cheek, and the victim had passed out and required intubation.  *See* PSR ¶ 12. The victim sustained further bruises and lacerations.  *See* PSR ¶ 12.

      The United States also makes this recommendation in part because the defendant has a violent criminal history, particularly taking into consideration the defendant's relatively young age (the defendant was 22 years old when he committed the instant offense and is now 23).  The defendant's criminal history includes the following: a 2005 misdemeanor conviction for fighting, noise, or offensive words (Oakland Municipal Docket No. 493238 [PSR ¶ 34]); a 2005 misdemeanor drunk in public conviction (Alameda County Superior Court, Docket No. 389849 [PSR ¶ 35]); and a 2006 felony assault conviction (Whatcom County Superior Court, Docket No. 06-1-01334-7 [PSR ¶ 36]).   The defendant currently has assault charges pending against him in Mount Vernon, Washington, for an incident that took place in September of 2006.  *See* PSR ¶¶ 42-43.  The defendant was also arrested in 2007 for fighting though those charges were dismissed.  *See* PSR ¶¶ 40-41.  The defendant's criminal history, between his first criminal contact at the age of 20 and his actions in this case at the age of 22, reflects a predilection towards violent criminal conduct.

      The United States also notes that the defendant informed the probation officer that his childhood was "pretty normal" and denies the presence of any abuse or neglect in his upbringing. *See* PSR ¶ 47.  The defendant reports that he has regular contact with his parents, who are supportive of him, and has regular contact with his great grandmother.  *See* PSR ¶ 46.  The

defendant reports doing "pretty well" in school and expressed a desire to attend junior college. *See* PSR ¶ 47.  The defendant has not maintained stable employment.  *See* PSR ¶ 59.  Despite the defendant's supportive family and reportedly pleasant upbringing, he has not made the most of his circumstances.  The defendant's mother stated she believed the defendant's mental problems may have been triggered by the untimely death of his brother, but she also reported that the defendant refused to participate in counseling following his brother's death.  *See* PSR ¶ 59.  The defendant's mental health problems may provide some explanation as to why his outbursts are so violent and his victims chosen in an apparently haphazard manner, but the fact that the defendant has mental health issues does not make the suffering of the victim in this case any less acute.

> **B.   "[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to deter; "to protect the public . . ."; and to provide rehabilitation.**

The United States requests the Court take into consideration the need to protect the public from violent crime.  The United States notes that much of the defendant's criminal history occurred while the defendant was utilizing public services.  The defendant's 2005 misdemeanor drunk in public conviction took place while the defendant was riding the Bay Area Rapid Transit system.  *See* PSR ¶ 35.  The defendant was also arrested in 2007 on Bay Area Rapid Transit for attacking a fellow passenger while on the trailing car of a Daly City bound train.  *See* PSR ¶¶ 40-41.  The defendant's 2006 felony assault conviction occurred when the defendant was at an emergency room in Washington, where the defendant attacked a nurse.  *See* PSR ¶ 36.  The pending charges in Mount Vernon resulted from an incident where the defendant attacked the manager of a homeless shelter.  *See* PSR ¶¶ 42-43.  The instant offense occurred while the defendant was riding a San Francisco Muni bus and the defendant attacked the bus driver.  *See* PSR ¶¶ 6-7.  The United States requests that the Court take into consideration that the defendant's criminal history reflects a pattern of violent outbursts against innocent members of the public and therefore the defendant poses a serious danger to the community.

The United States requests the Court take into consideration the need for the sentence imposed to reflect the seriousness of the offense and to provide just punishment for the offense.

1   Here the defendant's assault was unprovoked and imposed a profound trauma on the victim. The
2   victim reports that since the events of this case, he has experienced angry outbursts at his own
3   family and a loss of consortium with his wife. *See* PSR ¶ 16. He reports memory problems,
4   living in fear of going outside because he thinks he is going to be attacked again, and
5   experiencing anger, anxiety, grief, fear, sleep loss, nightmares, and trouble concentrating. *See*
6   PSR ¶ 16. He reports repeated flashbacks of the event, a fear the defendant will return and find
7   him, and a fear that the defendant is a threat to him or his family. *See* PSR ¶ 16. The victim was
8   terrorized by the events of this case, and nothing in our criminal justice system can adequately
9   remedy his suffering. This is partially because though the immediate physical pain inflicted on
10  the victim was terrible, the "effects of a crime aren't fixed forever once the crime is
11  committed--physical injuries sometimes worsen; victims' feelings change; secondary and tertiary
12  effects such as broken families and lost jobs may not manifest themselves until much time has
13  passed." *Kenna v. United States Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2005).   Here, the
14  defendant's actions had collateral consequences on the victim's psychological and emotional
15  well-being that persisted long after the physical injuries healed. The United States urges the
16  Court to take into consideration the terrible toll this crime has had on the victim's life in
17  determining what punishment is appropriate in this case.
18          The United States requests the Court take into consideration the need to provide
19  rehabilitation to the defendant and include the conditions of supervised release recommended by
20  the probation office, namely that the defendant participate in a mental health treatment program
21  as directed by the probation officer, comply with taking his prescribed medications, and report
22  changes in medication to his probation officer. The United States also requests that to the extent
23  it is available while the defendant is in custody, the defendant be afforded mental health
24  treatment while incarcerated.
25          **C.      "[T]he kinds of sentences available";**
26          As this offense is a Class C felony, the maximum term of imprisonment is ten years. 18
27  U.S.C. § 3559(a)(3); 18 U.S.C. § 113(a)(6). Not more than three years of supervised release may
28  be imposed on a Class C felony. 18 U.S.C. § 3583(b)(2). Probation for a period of one to five

UNITED STATES' SENTENCING MEMORANDUM
CR 07-0739 CRB                              6

years is authorized pursuant to 18 U.S.C. § 3561(c)(1). In the event the Court imposes a fine, the fine may not exceed $250,000. 18 U.S.C. § 3571(b)(3). There is also a mandatory $100 special assessment fee. 18 U.S.C. § 3013(a). Restitution shall be paid to the victim pursuant to 18 U.S.C. § 3663(a)(1)(A).

### D. "[T]he need to avoid unwarranted sentence disparities among defendants";

The Court should also impose a Guidelines-range sentence because it would respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). The U.S. Sentencing Commission's Guidelines Manual provides a well-considered, nationally applicable standard, and there are no factors suggesting that the defendant should receive a sentence any lower than those routinely meted out to criminal defendants with similar records around the United States.

### E. "[T]he need to provide restitution to any victims of the offense."

Although the victim has not identified any money or property lost, destroyed, or damaged as a result of the offense, any medical expenses, or lost income or wages, he did report that his wife lost wages from her work because she was taking care of him at home. *See* PSR ¶ 16. Lost wages are provided for under the Crime Victim Right's Act as an expense the Court may include in its restitution order where there are physical injuries. *See* 18 U.S.C. § 3663(b)(2)(C). Therefore, in the event the victim does ask for such restitution, the United States requests the Court enter a restitution order for the full amount of the victim's losses, if such order is authorized under 18 U.S.C. § 1593, § 2248, § 2259, § 2264, § 2327, § 3663, or § 3663A.

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court adopt the Guidelines calculation of the U.S. Probation Office, and find an Offense Level of 22 and Criminal History Category III applicable to defendant, yielding a sentencing range of 51-63 months. The United States further respectfully requests that the Court find that a sentence within this range is "reasonable" under the factors set forth in 18 U.S.C. § 3553(a). In conclusion, the United States respectfully recommends that the Court sentence the defendant to 57 months of imprisonment, the middle range of the Guidelines. In addition to the above-referenced requests,

the United States respectfully recommends that the Court include as part of its sentence the following conditions: three years of supervised release, a stay-away order for the victim in this case, that the defendant participate in a mental health treatment program at the direction of the probation officer, that the defendant comply with taking his prescribed medications, that the defendant not own or possess any firearms, ammunition, or destructive devices, that the defendant cooperate in the collection of DNA as directed by the probation officer, a search condition, and payment of a $100 special assessment.

DATED: July 30, 2008                    Respectfully submitted,

                                                JOSEPH P. RUSSONIELLO
                                                United States Attorney

                                                _____/s/_____
                                                WENDY THOMAS
                                                Special Assistant United States Attorney